IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 16-0031-WS |
| | ) |
| LARRY SLEDGE JR., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on defendant's Motion to Suppress (doc. 20) and the Government's Motion to File Exhibit Manually and Under Seal (doc. 22). The Motion to Suppress has been fully briefed and is now ripe for disposition.[1]

**I. Background Facts.**

The facts relevant to the Motion to Suppress are uncontested in material respects and are drawn in large part from a police recording of the incident. At approximately 2:00 a.m. on September 30, 2015, Baldwin County Sheriff's Deputy Jessi Brannan observed a black Chevrolet

---

[1] Defendant has requested an evidentiary hearing. However, it is well-settled that "[w]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (citation omitted); *see also United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (district court "may refuse a defendant's request for a suppression hearing … if the defendant fails to allege facts that, if proved, would require the grant of relief"). Sledge's Motion to Suppress neither disputes the veracity of key facts alleged by the Government (which are confirmed via the audio/video recording from Officer Clint Riley's dash camera and body microphone) nor supplies a specific alternative factual narrative that, if proved, would entitle him to relief. Rather, Sledge's Motion to Suppress turns on his interpretation of essentially uncontroverted facts, and his application of such facts to the law. No hearing is needed because the Motion thus turns on questions of law, and not disputed issues of fact requiring resolution via evidentiary hearing. *See, e.g., United States v. Horne*, 2006 WL 2668919, *5 (11th Cir. Sept. 18, 2006) (district court properly decided motions to suppress without a hearing where "Horne's motions presented issues of law, not fact," and "[n]either motion raised a disputed issue of fact that required resolution in an evidentiary hearing"). Accordingly, Sledge's request for evidentiary hearing is **denied**.

Camaro traveling on Highway 181 at a "faster pace than the other cars," then heard acceleration after the vehicle passed her location. (Doc. 23, Exh. 1, at 2.) Deputy Brannan pulled out from where she was parked and followed the black Camaro, at which time she observed that the vehicle was not displaying a license plate. For that reason, Deputy Brannan initiated a traffic stop of the black Camaro at Highway 181 and County Road 64. (*Id.*)

Deputy Brannan exited her vehicle and initiated contact with the Camaro's driver, Larry Antonio Sledge, Jr. At that time, the officer smelled what she believed to be marijuana, and surmised that Sledge was trying to conceal the aroma by smoking a Black & Mild pipe tobacco cigar. (*Id.*) Sledge provided his driver's license to Deputy Brannan, and indicated that he had just purchased the Camaro two days earlier. (*Id.*) When Deputy Brannan went to run Sledge's license, another officer notified her that Sledge was "a known narcotics violator." (*Id.*) At around this time, City of Daphne Police Officer Clint Riley happened to be driving by the location of the traffic stop. When he saw the blue lights, Officer Riley pulled over to offer assistance to Deputy Brannan. The events in the traffic stop from that moment onward were captured on audio and video recording from Officer Riley's dash camera and body microphone, and the Government has submitted that recording on a CD as an exhibit to its Response to the Motion to Suppress. (Doc. 22, Exh. 1.)[2]

---

[2] The Government has filed a Motion to File Exhibit Manually and Under Seal, with respect to the CD. The Motion is **granted** insofar as the Government requests leave to file the CD manually. However, the Government has failed to show good cause, or to offer any explanation, for why it contends the CD should be maintained under seal. Federal courts have long recognized a strong presumption in favor of allowing public access to judicial records. *See, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) ("The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process. … [T]he common-law right of access includes the right to inspect and copy public records and documents."). The presumption of access extends to "[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). In recognition of these principles, the Local Rules require any party seeking a sealing order to set forth "[t]he basis upon which the party seeks the order, including the reasons why alternatives to sealing are inadequate." General L.R. 5.2(b)(2)(B). The Government's Motion does not articulate any justification for the requested sealing order, and the Court's independent review of the recording reveals no sensitive contents, privacy concerns or *bona fide* law-enforcement interest in secrecy that might overcome the presumption of public access. For this reason, the Motion to File Exhibit Under Seal is **denied**, without prejudice to the Government's ability to renew such motion upon a proper showing that satisfies General L.R. 5.2(b).

The officers quickly determined that Sledge's driver's license had expired. At that time, Deputy Brannan asked Sledge to step out of the Camaro, explained to him that his driver's license was expired, and advised him to "get that fixed." Sledge responded, "yes, ma'am." Deputy Brannan then informed Sledge that he had 20 days from the date of the bill of sale to go to the DMV, register the Camaro, and obtain a license plate. Sledge answered, "I already got my insurance lined up," and said, "yes, ma'am," to Deputy Brannan's instructions that he get a tag within 20 days. Deputy Brannan said, "you're good to drive it, I'm just letting you know what you need to do," and it appeared that the traffic stop was about to conclude without incident. Then Deputy Brannan said, "I've got one more question for you if you've got a second." Sledge responded, "yes, ma'am." She inquired, "You got anything illegal in the vehicle?" Sledge answered, "no, ma'am," and started talking about the Black & Mild cigar he had been smoking. Deputy Brannan commented, "I knew I smelled something," and asked once more if there was anything illegal in the Camaro. Sledge again answered in the negative. Deputy Brannan asked, "You mind if I search it?" Sledge calmly and promptly responded, "yes, ma'am," in a tone of voice suggesting that he agreed. Deputy Brannan then patted Sledge down and said, "I'm just going to take a quick look, okay?" Sledge answered, "yes, ma'am." While Deputy Brannan searched the Camaro, Sledge stood nearby and chatted with Officer Riley about the new car, the Krispy Kreme residue that Sledge said was on the seat, where he lived, where he was going and so on. At no time did Sledge object or indicate in any way that he did not consent to the search, much less suggest that Deputy Brannan had misconstrued his prior statements as consent.

Within two minutes, Deputy Brannan returned from the Camaro and instructed Sledge to put his hands behind his back, saying he was under arrest for possession of marijuana that she had found under the passenger seat. Sledge denied any knowledge of the marijuana, but was handcuffed and placed in the back of Deputy Brannan's vehicle. The search of the Camaro continued, ultimately yielding seizure of a marijuana cigarette, a small marijuana bud, a stack of $100 bills in the center console (totaling more than $5,000) and a backpack in the trunk containing white residue, a crack cocaine rock, cocaine powder, a package containing a white substance, a Ziploc bag of marijuana, and paraphernalia (Ziploc bags, rolling papers, gloves, digital scales and cigarillos).

Based on evidence seized from the Camaro during the traffic stop, Sledge was indicted in this District Court for possession with intent to distribute 6.42 grams of a mixture or substance

containing cocaine, 25.64 grams of crack cocaine, and 75 grams of marijuana, all in violation of 21 U.S.C. § 841.  (Doc. 1.)  Sledge now moves for suppression of all evidence seized during the vehicle search on September 30, 2015.[3]

## II.     Analysis.

Sledge's Motion to Suppress is twofold.  First, he challenges the legality of the traffic stop, which he characterizes as the product of a "mistake of law" by Deputy Brannan.  Second, he asserts that the vehicle search violated the Fourth Amendment because he refused consent.  Each argument will be addressed in turn.

### *A.     Legality of the Traffic Stop.*

With regard to the initial stop, it is well-settled that "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, --- U.S. ----, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014).  As a general proposition, a traffic stop comports with the Fourth Amendment "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Navarette v. California*, --- U.S. ----, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) ("The Fourth Amendment permits brief investigative stops – such as the traffic stop in this case – when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.") (citations and internal quotation marks omitted).

Here, the unchallenged evidence is that Deputy Brannan initiated a traffic stop of the black Chevrolet Camaro because she observed that it did not display a license tag.  By statute, Alabama requires that "[e]very motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue."  Ala. Code § 32-6-51.  Violations of this section are a misdemeanor punishable by a fine of not more than $500 and suspension of driving privileges for a period of between 60 days and six months.  *Id.*  Deputy Brannan plainly had reasonable

---

[3]     Defendant's six-page Motion to Suppress is single-spaced, in contravention of General L.R. 5(a)(1), which provides that the text of all pleadings and other papers filed with the Clerk of Court must be double-spaced.

suspicion to believe that Sledge was in violation of § 32-6-51; after all, he was operating a car that displayed no license plate on a public highway in Alabama. Therefore, she had a particularized and objective basis to believe that he was committing a misdemeanor, so as to justify the stop under the Fourth Amendment.

In response to this line of reasoning, Sledge points out that § 32-6-51 is subject to a grace period for newly acquired vehicles. Indeed, another Alabama statute provides that a person "acquiring a new or used motor vehicle may be granted a grace period of 20 calendar days from date of acquisition to procure a license tag or plate." Ala. Code. § 40-12-264. Sledge, of course, was protected by that 20-day grace period because he had purchased the Camaro two days earlier; therefore, he was not actually in violation of § 32-6-51 at the time that Deputy Brannan initiated the traffic stop. While Sledge makes much of this point, it is inconsequential for Fourth Amendment purposes. The legality of the stop does not hinge on whether Sledge was actually in violation of the Alabama license plate law; rather, the critical question is "whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place." *Heien*, 135 S.Ct. at 539. The Court readily finds that it was reasonable for Deputy Brannan to suspect that Sledge's conduct was illegal when she saw him driving a black Camaro where there was not "attached and plainly visible on the rear end of such motor vehicle a license tag or license plate" as required by Alabama Code § 32-6-51. The fact that Deputy Brannan became aware after the stop of other circumstances that rendered Sledge not in violation of § 32-6-51 in no way vitiates her reasonable suspicion for carrying out the traffic stop in the first place. The Fourth Amendment does not require a law enforcement officer to be right 100% of the time. *See Heien*, 135 S.Ct. at 536 ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection.") (citation and internal quotation marks omitted). Nor does an otherwise valid stop become illegal if reasonable suspicion fails to blossom into a determination of actual criminal conduct. Reasonable suspicion is not judged through the unforgiving lens of hindsight. Deputy Brannan clearly had reasonable suspicion to believe that Sledge was in violation of the tag requirements of § 32-6-51; therefore, Sledge's Fourth Amendment rights were not trammeled when she pulled him over on suspicion of a tag violation.

Nor does Sledge help his cause by casting Deputy Brannan's actions as a "mistake of law" which cannot provide reasonable suspicion to justify a traffic stop. As an initial matter, there was no mistake of law here. The video reflects that Deputy Brannan well knew that (i) § 32-6-51 generally made it illegal for a driver to operate a motor vehicle without a license plate, and that (ii) § 40-12-264 carved out a 20-day grace period for purchasers of a new or used motor vehicle. The information she had at the time of the stop was that the Camaro had no tag, and she had no facts that might demonstrate application of the § 40-12-264 grace period until after the stop was completed. If Deputy Brannan made a mistake at all in stopping the Camaro, it was one of missing facts, not of misunderstanding Alabama law.

More fundamentally, the mistake of fact / mistake of law dichotomy on which Sledge's argument rests is itself a misapprehension of Fourth Amendment jurisprudence. Two terms ago, in *Heien v. North Carolina*, the U.S. Supreme Court wrote, "The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold that it can." 135 S.Ct. at 536. In so ruling, Chief Justice Roberts, writing for the 8-1 majority, reasoned as follows: "[R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. … There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law." *Id*. Thus, the premise of Sledge's argument – that his Fourth Amendment rights were violated because mistakes of law can never justify traffic stops – is incorrect because, first, Deputy Brannan did not make a mistake of law, and second, even if she did, the Supreme Court has held that reasonable mistakes of law can indeed give rise to a valid traffic stop.

For all of the foregoing reasons, the Court readily concludes that Deputy Brannan had sufficient probable cause or reasonable suspicion to initiate a traffic stop of the Camaro for an apparent tag violation in the early morning hours of September 30, 2015.

### B.   *Consent to Search the Vehicle.*

Sledge's second argument is that he never consented to the officers' search of the Camaro. "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given …. Voluntariness is a question of fact

to be determined from all the circumstances." *United States v. Yeary*, 740 F.3d 569, 581 (11th Cir. 2014) (citation omitted); *see also Lebron v. Secretary, Florida Dep't of Children and Families*, 710 F.3d 1202, 1214 (11th Cir. 2013) ("Although a search conducted pursuant to a valid consent is constitutionally permissible, … a valid consent means one which is in fact, freely and voluntarily given.") (citations and internal quotation marks omitted).

The Government points to the video to establish that Sledge did, in fact, voluntarily consent to the search of his vehicle. Careful review of the video recording confirms the following: (i) Deputy Brannan asked Sledge if she could search the Camaro, and he answered affirmatively; (ii) as she patted him down, Deputy Brannan indicated to Sledge that she was "just going to take a quick look, okay?" to which he replied, "yes, ma'am;" (iii) during the ensuing search by Deputy Brannan, Sledge stood nearby with Officer Riley discussing various topics, but Sledge never protested or objected or denied having authorized her to conduct the search that he was then watching her perform; (iv) at no time prior to the search did the officers have their weapons drawn, address Sledge in a threatening manner, or otherwise coerce him into acquiescence; and (v) nothing about Sledge's words or demeanor before or during the search was in any way incompatible with the existence of voluntary consent. Given the totality of the circumstances as demonstrated on the video, the Court readily finds that Sledge voluntarily consented to the search of his vehicle, and that the search was therefore authorized under the Fourth Amendment.

In arguing otherwise, Sledge's argument hinges in its entirety on Deputy Brannan's word choice in how she framed the initial request for consent. Specifically, the video reveals that Deputy Brannan asked, "You mind if I search it?" and that Sledge responded, "Yes, ma'am." Defendant argues that Sledge's response meant that he <u>did</u> mind if she searched the vehicle and that he was not consenting to same. While Deputy Brannan's decision to frame the question in an ambiguous manner may be unfortunate, defendant cannot parlay this word choice into suppression of the fruits of the search. Here is why: The totality of the circumstances, as depicted in the video, plainly establishes voluntary consent. Sledge's calm tone of voice and relaxed demeanor suggested that he in fact consented to the search. Stated differently, his "yes, ma'am" sounded for all the world like acquiescence, rather than defiance. Besides, Deputy Brannan followed up by asking if it was okay if she took a quick look, to which Sledge again responded, "yes, ma'am." Taken in the context of the video, nothing Sledge said or did would

reasonably support an inference that he was refusing consent to search. And the mere fact that Sledge answered "yes, ma'am" to a poorly phrased question asking if Deputy Brannan could search in no way negates the other indicia of consent. *See United States v. Salas*, 756 F.3d 1196, 1203 (10th Cir. 2014) (finding that defendant voluntarily consented to search of his vehicle where officer asked "You sure you don't mind?" and defendant said "no," where dash cam video reflected defendant's relaxed demeanor and absence of physical coercion or intimidating body language or tone by the officer); *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004) (concluding that defendant voluntarily consented to search of truck where defendant responded "yes" when officer asked if defendant "would mind if [officer] searched the truck"). The totality of the evidence contained in the video of the traffic stop reflects that Sledge voluntarily consented to Deputy Brannan's search of the Camaro; therefore, the search comported with Fourth Amendment guarantees.

**III.   Conclusion.**

For all of the foregoing reasons, defendant's Motion to Suppress (doc. 20) is **denied**. The Government's Motion to File Exhibit Manually and Under Seal (doc. 22) is **granted** insofar as the Government seeks leave to file the CD manually, but is **denied** insofar as the Government requests that it be filed under seal, for failure to comply with General L.R. 5.2(b)(2)(B). This case remains set for jury selection on **June 1, 2016**.

DONE and ORDERED this 25th day of May, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE